Good morning, Your Honors, and may it please the Court, Anshu Vidhrani, Assistant Federal Public Defender, on behalf of the appellant Justo Santos. The government here stripped Mr. Santos of his citizenship on the basis of the unconfronted testimony of an absent and unreliable former USCIS adjudications officer by the name of Lucas Barrios. In so doing, Mr. Santos's foundational constitutional right under the Sixth Amendment to confront those who would bear testimony against him was violated. This confrontation right is a critical protection at the very heart of our adversarial system, and in Crawford the Supreme Court made clear that it applied any time a declarant's words were to be used against a defendant in a trial to prove or establish any fact in that trial. And this is because confrontation through the crucible of cross-examination of the declarant is the best means that we have of testing the reliability of a witness's testimony. Here, the handwritten notes and checkmarks made on Mr. Santos's N-400 form by adjudicator Lucas Barrios were clearly testimonial statements that should have been subject to cross-examination at trial by Lucas Barrios. The declarant, Lucas Barrios, should reasonably have believed that his checkmarks and handwritten notes would have been available for use at a later trial, and this is so because the naturalization interview process itself is a unique being in the realm of the immigration proceedings in that each... Your client signed the document. Your client signed the document. The N-400 form? Yeah, after it was all filled out. Well, we know that he signed it, but we don't know when he signed it. Let's assume he signed it afterwards. Let's just make that assumption. Sure. Then what? Why isn't... If he signed it afterwards, why isn't it an admission? Well... On his part. Because they were still words that were not... Those words written on the document were not his words. They weren't... I understand that they were not his words, but why... Do they have to be his words to be adopted? They do not. They do not, no. So it's critical as whether he signed it before or after the notes were made. Right. Why would he sign it ahead of time? Well, that's unclear how this adjudicator went through the adjudication process.  I mean, logically speaking, an alien wouldn't sign it ahead of time, but the problem here is that we don't know if this particular interview proceeded according to USCIS policy and procedure or whether he was asked to sign it before. Was he placed under oath? It's unclear. When the judge heard this motion in limine, I looked for a transcript of the... The hearing was not transcribed, was it? No, it was not. Is there anything in the record which tells us why the judge denied the motion in limine other than he denied it? My understanding is that this case was transferred from one judge to another judge, and so... I understand that. Is there anything in the record that tells us why the motion was denied? I don't believe so. So the argument we're making is that the statements themselves are... They weren't adopted admissions, and it's sort of circular reasoning to argue that they were because the entire basis of the argument is that we don't know... This is typical in the course of a trial that there's, say, a hearsay objection or some other objection based on a ground that arguably would say that the evidence is inadmissible. Okay. It's typical that the court denying the objection or overruling it doesn't explain why the court is doing that. So what does the case law tell us we have to do when we review the naked denial in the face of a hearsay objection, basically? Well, in the face of a hearsay objection, I believe this court's review is for an abuse of discretion. Well, of course I know that. Right. So the question is, the court does not abuse its discretion if it applies the correct rule of law. Correct. Or that it does not make an erroneous fact-finding. Correct. Okay. So the rule of law was whether or not that was... Basically, whether or not that was an adopted statement, wasn't it? Right. And so our argument is that it is not. Because there was evidence that he signed it afterwards. Let's put it this way. The probability is he signed it afterwards. I don't agree that we can even argue that there's a probability that he signed it afterwards because we don't know what happened during the interview process. Did anybody say at the time the judgment or ruling or prior to that that he signed it beforehand? Well, I don't believe anyone argued that in court, but I do believe the argument... No, not argued. Testified. Was there any testimony in the record that he signed it before the application was filled out? No. The testimony in the record provided by the USCIS adjudications officer who did testify... Well, then why couldn't the judge find this fact that it is probable, we'll call it preponderance, that he signed it afterwards because that's the only thing that made sense? Well, I would say that that's not actually a fact in the record then. It would just be a fact found... Well, let me ask you this. Did the witness testify that he signed it afterwards? Yes, she did. Okay, but that's the policy and that makes sense. So why couldn't the judge rely on that? But the other evidence that was also presented was that she didn't actually know what occurred during the specific interview. No, no, but she testified to the policy and the policy made sense that you sign it after it's filled out, not ahead of time. Right. There's no reason to sign it ahead of time. Right. No, I'm not disagreeing with that. It's worthless to sign it ahead of time. Do you know the date of the interview? I believe the interview occurred on January 28, 2009. I'm looking at the form, the top of the form which is filled out before the interview has the signature and is dated July 26, 2007. Yes. That's the date he filled out the application. Is that correct? Mm-hmm. And then the bottom half, which is in red ink and says that I know the contents of this including the corrections numbered 1 through 8 and so forth are true and correct. And right above his signature is the date January 28, 2009. So why is that not some evidence that he signed on that date whereas the signature above, which is just the application before the interview, that seems to be, unless there's some contradiction, why isn't that powerful evidence that he signed it on or about that time? Well, we're not arguing that he didn't sign it on the date of the interview. The question is whether he signed it before or after the questioning began by Lucas Barrett. Well, it says including the corrections 1 through 8. So the corrections were handwritten as the interview went along. So why does that not say it was after the interview? Well, so per USCIS policy and procedure, correct that the interviewer would go through the questions, make the checkmarks, make the notes, and then ask the applicant to reaffirm under penalty of perjury that the corrections made were true and truthful. Well, that's what they have here. And the interviewers numbered the corrections, 1, 2, wherever on the form. They made it 1 through 8. Right. So that has to all be done. And then they fill in the box how many corrections there were, 1 through what, and it's consistent. So it has to be after the questions were asked. I don't know how you argue that it's not after. Well, because we don't know. And Natalie Diaz, who was the USCIS adjudicator who testified at trial herself, testified to procedure. Well, she's not the person who did the questions. Right. So she actually didn't know were the questions even asked? Were these even his answers? I'm talking about the face of the document tells you. Right. The face of the document. The only reasonable inference from the face of the document is, or maybe, why is that not true? Well, I don't believe that that's true because, again, we don't have the person who actually made the marks telling us, yes, I asked him question 5. Is there a regulation that says how you fill out the document and sign it? I believe there's... There must be. There must be a regulation. I don't know if there's a regulation. I believe there is. But we can take judicial notice of it if there is one. Is the problem that she said when she testified that it's usually or generally filled out this way instead of that it's always filled out this way? Correct. And so by saying usually or generally, she was essentially saying there may be some times when it's not? Right. And what we do know is that every interview is unique to the applicant who is presented to the adjudicator and it is in the adjudicator's own... It's the adjudicator's decision what to ask and what not to ask and how to ask it. And we do know that this adjudicator maybe wasn't so great at following policy and procedure in the past. If they signed it beforehand, it renders the document worthless, doesn't it? I'm sorry? The document becomes worthless if the person signs it ahead of time. I wouldn't... It has no probative value at all. If that was the case, that would be accurate, yes. Okay. So you'd have nothing but worthless documents after all this interviewing is taking place. Actually, let me amend my answer. If I may answer, I see my time has run. The document itself that Mr. Santos filled out earlier on in July 2007, we're not arguing that that document is not inadmissible. The argument is that... No, I understand that. Right. The document, after the interview, becomes worthless. The interview portion, yes. Becomes worthless. If it became clear that he did not follow policy and procedure... There has to be a regulation that tells people who do these things how to fill out the document, doesn't there? Somewhere there is. I don't know that for sure. Thank you. Mr. Parker, maybe you can straighten this out. Good morning, and may it please the Court. My name is Robert Parker for the United States. Is there anything in the record that tells us why the judge overruled the motion in limine other than the word denied? Yes, yes, there is. Where did we find it? It's important to remember... I looked and couldn't find it. There were two trials in this case. Before the first trial, at docket entry 132, this is the status conference pre-trial... Before the first trial. Before the first trial, the judge ruled on all of the motions in limine. This issue was raised in the motions in limine before the first trial. All right. There was no transcript of that, though, was there? There is. There is? She said there isn't. Well, it's at docket entry 132. I have it here, and I can read you on page 5. The court rules on this motion in limine and says, my ruling in regard to that, the only issue I see as to the application is that it... There's a little bit more, but it says, his signature is approved and is sworn to and subscribed before me in the box. And so I find that would be pursuant to rule 801, which would be a party admission as adopted by the defendant based on part 13 of the law. So he had an implied finding that the document was signed after it was filled out. I think that that's correct. For it to be an admission, an adopted admission, it has to be that. Yes, and then during the second trial, the defendant raised this objection mid-trial when the officer... All that there is in the trial is three words. Hearsay, confrontation clause, rule 403. Correct. Period. Yes, and then the district court denied that. A dialogue and a denial. Correct. I think that the most reasonable explanation is that the court was simply adopting the court's ruling before the previous trial where it spelled out in some detail that it was relying on the party admission rule under rule 801. And that resolves the confrontation clause concern as well. Now I think the reason that the language of the form and the testimony below is ample evidence are really threefold. One is the fact, as my colleague forthrightly acknowledged, they did not raise this below. In fact, this argument was inconsistent with the defendant's entire defense which was, yes, I made these statements but I was mistaken. I didn't understand what the form was asking for when it said, were you ever arrested? I thought it was arrested in the United States, not abroad. That was his defense. So the idea that the government would have had to put on specific evidence to show that he had signed this form, signed this certification after the other changes had been made. There simply was no reason to do that. It also, as I think Judge Hall was pointing out. So with respect to the check marks on it, how do we know that he understood what the check marks meant? That is, that the check marks meant that he was affirming what he had written on the application? Well, I think we know that because it says so in the admission itself. If you look at page 14, this is government's exhibit two, which is in the government supplemental appendix. The language of the certification is that I certify under penalty of perjury that I know the contents of this application including corrections numbered one through eight. Those are the handwritten notations. And that they are true and correct to the best of my knowledge. But, but, corrections, certainly the words. I would agree with you. But how do we know that he understood what the check marks meant? Well, I'm not sure that's covered by corrections. There was extensive testimony at trial that explained why these check marks were made. And Officer Diaz testified at great length about everything right down to the color of ink is prescribed by There's no question that the officers knew what the check marks meant. But the question is how do we know that Mr. Santos knew what the check marks meant and that he was adopting, you know, I've confirmed this to the officer. Well, the check marks simply mean, as Officer Diaz explained, they simply mean that the adjudicator asked the same question that was written on the form, asked it orally. Just, I think I'm not being clear. I understand what the check marks mean. Right. But if we're saying that Mr. Santos adopted all of the markings on the form that the officer put on there, then don't we need to know that he understood what the markings meant? Well, I think How can you adopt something if you don't know what it means? Well, I think he has certified that he is fully aware of their content. Is it a credibility issue? Yeah, I mean It's a credibility issue the court. He didn't testify. The adjudicator did not. Correct. Nor did Mr. Santos. Whatever the case may be, it is a credibility issue. Correct. Well, the jurist, why I don't understand why it's a credibility issue. If he had said, I agree with all of the markings on the document, right, then I would agree it's a credibility issue. But he said, I agree with the corrections that have been made, right? And a checkmark is not a correction, so how is he supposed to know that that means, I mean, maybe he does know. I'm just asking how he knows that. Well, the check, I think that it is important to keep in mind exactly what the checkmarks represent. They simply represent that the adjudicator asked the same question that's on the form orally, and his response was consistent. I completely understand that, but if we are saying that he confirmed to Barrios that this is what he said, right, that this is what he meant, this is what he said, he didn't have any corrections, and we are saying that he understood that the checkmark there meant that he confirmed that to Barrios. Don't we need to be able to show that he actually understood that that's what the checkmark meant, because how could he assume to confirm at that point? He's already confirmed his answer. If you're asking, did he also understand that by making a checkmark the adjudicator was stating that he had confirmed that answer? That's what I'm asking, because we don't have the adjudicator to say that he was relying on his signature on the bottom affirming that he was adopting the contents including the checkmarks, which were the affirmations of what he was saying. Maybe it doesn't matter, because maybe it's not testimonial. I don't know if you want to address that. Feel free to address the first question if you have more to say on it. Sure. I'd like to address your question. Can I ask you this? Every checkmark is just over no, where he's already sworn to all those answers. Correct. The checkmark, if you look at the form, he's sworn to all the answers, check, no. He's filled it out himself, no. They're not contesting that he didn't fill out the original application, are they? That's correct. So it's got no, and all it's got is a checkmark over the no, so there's not anything additional he's already got that he says no to those questions. That's correct. The affidavit says, I know that the contents of this application, including corrections numbered 1 through 8, why wouldn't that cover the checkmark? Well, the corrections are actually, and I think this is important to answer your question, Judge Rosenbaum, the testimonial, I'm sorry, the evidentiary value of these notations are really contained in the words that the adjudicator wrote. It's not just the checkmark. It's claims no other under travel. It's claims no arrest, no offense, no DUI. That is the adjudicator writing down what Mr. Santos told him and Mr. Santos did adopt that. It doesn't matter whether or not he understood the checkmarks anyway because the government is relying solely on the words. Is that your position? The government is relying almost exclusively on the words. I mean, the checkmarks obviously are written down, aren't they? We're not relying solely on the words, no, but I think the point is the evidentiary value of any of the checkmarks are confirmed by the words that he has written down and those clearly were adopted because those are corrections one through eight. Now, I also think it's important setting aside this entire matter. Evidentiary value of the checkmarks is cumulative anyway because he's already answered the questions himself in his own handwriting. I mean, it would be most cumulative if it has any evidentiary value. The only reason it matters is because one of the grounds for the government's position, as I understood it, was that he had lied orally. Correct. And so that's why it matters, right? Correct. It matters because his oral statements during the interview, if he lies about those, those would provide an independent ground for denying his request for naturalization because he's failed to demonstrate good moral character. That's correct. Now, I think that all of the notations, including corrections one through eight, which he has expressly adopted, demonstrate that. But setting that aside for a moment, this also is not testimonial because, as the Supreme Court explained in Melendez Dia's public records of this sort, just do not require the sort of testimony that the Confrontation Clause is intended to get at. The reason these aren't testimonials is because the primary purpose of this document is to determine the applicant's suitability for naturalization. It is not to generate evidence for a criminal proceeding. And that's what the Supreme Court has explained. In that circumstance, the Confrontation Clause simply does not apply. If he adopted the information that doesn't matter whether the Confrontation Clause issue disappears, does it not? Correct. Yes. If the Court finds that this was adopted under Rule 801, I think by definition Confrontation Clause would not apply because you have no right to confront your own statements. Even if the Court found       apply because you have no right to confront your own statements. If the Court weren't convinced by that, I think clearly this would qualify as a non- testimonial statement. There are a number of cases that have established these sorts of statements including hand corrections are not testimonial. I think that might be right. I don't know if you want to address it. It does seem like the officer is in a position to make an adjudicatory determination in that way. Do I think he's being honest? If I don't think he's being honest, then I'm not going to recommend him for citizenship. If I do think he's being honest, I don't  he's being honest. We need to be concerned about that. Does the primary purpose part of the test outweigh that? I don't think it affects the analysis because this probably blends the two parts of your question. The determination of the applicant's honesty goes to whether or not his request for naturalization should be granted or denied. It's not an effort to root out evidence of potential crime. If it were otherwise, the mere  that there might potentially be criminal penalties for lying to the government, if that were sufficient to establish that a statement is testimonial, I think every statement anyone makes to any government official would become testimonial because under 18 USC 1001 or other false statement statutes, lying to the government about a material matter is always a crime. It's not simply the fact that there might be incidental criminal penalties that would attach to lying. What you have to look at is the Supreme Court explained in Davis and Melendez Diaz and other cases. You look at what is the nature  the crime. I think anyone would say the primary purpose of filling out a naturalization form is to generate evidence for a criminal prosecution. It's to determine whether the confrontation clause doesn't apply. That's why the hearsay rules don't apply. There was sufficient evidence to find that his application would have been denied because he failed to demonstrate good moral character. There are a number of other grounds on which that determination would also have been made. I know my colleague didn't address those in her argument. I won't either. Unless there are further questions. I do have one further question. Was this interview conducted in English or Spanish with an interpreter? How was the interview conducted? I understand it was conducted in English. I wondered if the purpose of these interviews are really to try to help the applicant get it right so that it can be explained to the government and the defense witness.        regulation. I don't know. I don't know. I don't know. I don't know. I don't know. I don't        I don't know. I don't know. I don't know. Yes, the testimony below was clearly this. There were instructions that are made available to the applicant. Where would we find those? I believe the current instructions are available online. I don't know the instructions for this particular application. This was in 2009. I imagine they've changed. I don't know the instructions for this application. I don't know the instructions for this particular application. I don't know the instructions for this particular application. I believe the current instructions are available online.  believe there is a program somewhere that tells these examiners to be very careful about how they go about their job. Officer Diaz testified at great length that that was in fact the requirement. Thank you. Thank you. So there was a transcript? I was aware that there was hearings held at a prior trial. And a transcript? I wasn't aware that there was a transcript. And an objection at trial? I knew that there was an objection at trial. I wanted to address first the court's concerns about whether these statements are testimonial. And if you go back to Crawford and you really look at the decision there, Crawford laid out three core testimonial statements and listed police interrogations, pre-trial testimony, police interrogations, of course those would fall into this class of testimonial. And Davis focused on this one core class of testimonial statement, and that is a police interrogation. And it applied the primary purpose test to determine when is a police interrogation testimonial or not. So that's where we come up with this whole, if the party being interrogated by the police is seeking emergency assistance, the primary purpose of that interaction is not testimonial. I don't believe the primary purpose test necessarily applies in every situation to bar relief under the confrontation clause. And Justice Scalia said it's not a condition precedent for the confrontation clause to apply. Here, these interviews are conducted under penalty of perjury and statements are made under circumstances under which an objective witness would reasonably believe that his statements could be used in a later criminal proceeding. This court in United States v. Charles actually did hold that statements made during an immigration proceeding were testimonial. In that case, there's an interaction between someone at the port of entry and this court held that the interpreter statements as to what that defendant said were testimonial in nature and therefore that interpreter should have been present at trial in order to testify and be subject to cross examination. If the court had applied a primary purpose test in a situation like that, the primary purpose test is not necessarily criminal prosecution. So I think applying the primary purpose test to bar relief here does a disservice to Crawford and a number of testimonial categories that it does not  to be a criminal prosecution. So I think it does not have to be a criminal prosecution. I think it does not have to be a criminal prosecution. I think it does not have to be  criminal prosecution. I think it does not have to be a criminal prosecution. I think it does not  have to be a criminal prosecution. I think that all  documents have no probative value. We have no additional meaning without the person coming to testify west of the Supreme Court. We have no additional meaning without the  coming to testify west of the Supreme Court. We have no additional meaning without the person coming to testify west of the Supreme  We have no additional  without   coming to testify west of the Supreme Court. We have no additional meaning without the person coming to testify   Supreme Court.